

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

    v.

ROBERT PROSPERI,
GREGORY A. STEVENSON,
GERARD M. MCNALLY,
MARC J. BLAIS,
JOHN J. FARRAR, and
KEITH H. THOMAS,

    Defendants.

Crim. No. 06 CK 10116 RGS

Violations: 18 USC 371, 286,
1020, 1341, and 2

#### INDICTMENT

THE UNITED STATES GRAND JURY, in and for the District of Massachusetts, charges that:

#### COUNT ONE
(Conspiracy to commit highway project fraud and mail fraud)

At times material to this indictment:

1.    The Central Artery/Tunnel (hereinafter "CA/T") project, colloquially known as the "Big Dig," was a multi-billion dollar Interstate Highway System public construction project in the city of Boston funded by agencies and departments of the state and federal government. The CA/T project built or reconstructed about 7.5 miles of urban highways, about half of them underground.

2.    The Federal Highway Administration (hereinafter "FHWA") is an operating administration of the United States Department of Transportation which administers the distribution of federal funds to state and local agencies responsible for building and

maintaining roadways, bridges and tunnels. FHWA's functions, as delegated by the United States Secretary of Transportation, included approving CA/T construction projects and distributing federal highway construction funds for use on CA/T construction projects to the Commonwealth of Massachusetts. A series of Congressional acts authorized federal funds to be spent on the CA/T project. In 1987, Congress passed The Surface Transportation and Uniform Relocation Assistance Act of 1987 (STURAA). The 1987 Act was followed by The Intermodal Surface Transportation Efficiency Act (ISTEA) Implementation Interstate Maintenance Program in 1991. On June 9, 1998, Congress passed The Transportation Equity Act for the 21st Century. Finally, on August 10, 2005, Congress passed The Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users. By project's end, the federal government will have spent approximately $8.549 billion on the Big Dig.

3. The Massachusetts Highway Department (hereinafter "MHD") was responsible for all aspects of CA/T construction projects from approximately 1989 through 1997. In or about March 1997, the Massachusetts Legislature passed the Metropolitan Highway System (MHS) Act, which gave the Massachusetts Turnpike Authority (hereinafter "MTA") responsibility for supervising the completion of the CA/T. After passage of the MHS, MHD remained responsible for soliciting bids, awarding CA/T contracts, and

2

making payments to CA/T contractors on behalf of the Commonwealth of Massachusetts. MHD also ensured that the FHWA reimbursed the Commonwealth of Massachusetts for the federal contribution toward the work actually performed and materials actually used on CA/T construction projects. After passage of the MHS, MTA's responsibilities included direct oversight and project management of the day to day operations of the CA/T. These responsibilities included, among others:

(a) inspecting work performed and materials used by said private contractors to ensure that they were in accordance with contract specifications; and

(b) ensuring that said private contractors working on CA/T construction projects charged the Commonwealth of Massachusetts only for work performed and materials actually used during the performance of CA/T contracts.

4.  C17A1 was one of the CA/T "mainline tunnel" contracts which encompassed the northbound lanes of Interstate 93 (hereinafter "I-93") from Congress Street to High Street and the southbound lanes of I-93 from High Street to Oliver Street. A major part of the contract included the construction of the tunnel walls, base slab, and roof slab which were all made, in whole or in part, from concrete. Modern Continental Corporation (hereinafter "MCC") was the general construction contractor on C17A1.

3

5. C17A9 was also one of the CA/T mainline tunnel contracts which encompassed the northbound and southbound lanes of I-93 from High Street to State Street as well as the modernization of Massachusetts Bay Transit Authority Aquarium Station. The contract called for the construction of the tunnel walls, temporary decking, caissons, base slab, and roof slab which were all made, in whole or in part, from concrete. A joint venture between MCC and Obayashi USA was the general construction contractor on C17A9.

6. C17A6 was also one of the CA/T "mainline tunnel" contracts which encompassed, among other things, the southbound lanes of I-93 from Kneeland Street to Oliver Street. The contract included the construction of cut-and-cover tunnels, drilled shaft foundations, ramps and bridges which were all made, in whole or in part, from concrete. Particularly, the tunnel walls, base slab, and roof slab were made, in whole or in part, from concrete. MCC was the general construction contractor on C17A6.

7. C09A4 was the CA/T contract for the I-93 northbound interchange at the Massachusetts Turnpike (hereinafter "I-90"). A major part of the contract included the construction of surface roads, boat sections, tunnel sections and viaducts which were all made, in whole or in part, from concrete. A joint venture between J.F. White Contracting Company/Slattery

4

Associates/Interbeton, Inc. and Perini Corporation was the general construction contractor on C09A4.

8.    C09B1 was the CA/T contract for the I-90 Fort Point Channel Crossing.  A major part of the contract included the construction of cut and cover tunnels in multiple areas, the construction and installation of six concrete immersed tube tunnel sections under the Fort Point Channel, and the construction of two bridges, which were all made, in whole or part, from concrete.  MCC was the general construction contractor on C09B1.

9.    Often, CA/T tunnel walls were constructed using a building method known as "slurry wall construction."  "Slurry" was a viscous liquid ordinarily containing bentonite clay which held excavations open prior to concrete placement.  The tunnel walls on contracts C17A1 and C17A9 were "slurry walls."  The base slab was a concrete slab between two slurry walls upon which the tunnel roadway was built. A concrete "mud mat" was poured before the base slab and waterproofing materials were applied to the mud mat before the base slab was constructed.  The roof slab was a concrete slab which formed the tunnel ceiling and spanned the area between two or more slurry walls.  The roof slab was underground and was generally covered by surface roadways and parkland.  Deep duct shafts connected the tunnels to surface vent buildings, and sometimes were installed beneath the mud mat.

5

Drilled shafts were vertical concrete underground columns which generally encased steel beams used to support tunnel structures. These deep duct shafts and drilled shafts were also constructed using the slurry methodology.

.10.  CA/T project-wide specifications and supplemental specifications were issued by the CA/T to define materials and methods for the concrete used on the various contracts mentioned above.  Furthermore, each contract also contained additional contract specific specifications.  Accordingly, specifications regarding the type, strength and properties of concrete were set forth in detail by the CA/T.  General construction contractors were required to submit specific formulas, known as "mix designs," for concrete consistent with project and contract specifications.  Such submissions, known as "submittals," were subject to review and approval by the CA/T before use on the project.  The CA/T project-wide supplemental specifications, and contract specifications through reference to the CA/T specifications, generally prohibited the addition of water to concrete after the concrete was mixed or "batched" except in certain defined and controlled circumstances.  Furthermore, the aforementioned specifications strictly prohibited the use of concrete where over ninety (90) minutes had passed between the time the concrete had been batched and the time it was placed or poured.  Concrete over ninety (90) minutes old was known as "old

6

concrete."

11. The CA/T supplemental specifications also required that the concrete plants produce "batch reports" or "batch slips" for each truckload of concrete. The CA/T specifications required that these batch reports provide the following information: date and time of batching, concrete plant number, identification number identical to that of the concrete delivery ticket, code for mix design, and construction contract number. The CA/T further required the delivery of a copy of the batch report to the CA/T engineer at the time of concrete placement. CA/T inspectors relied on the accuracy of the information provided on the batch reports.

12. Aggregate Industries N.E. [Northeast region], Inc. FKA Bardon Trimount (hereinafter "Aggregate") is a wholly owned subsidiary of Aggregate Industries, Inc. headquartered in Bethesda, Maryland. Prior to March 2005, Aggregate Industries, Inc. was owned by Aggregate Industries PLC located in Leicestershire, England. In approximately March 2005, Aggregate Industries PLC was purchased by Holcim Ltd, located in Jona [Canton of St. Gallen], Switzerland. Aggregate was in the business of manufacturing and supplying ready-mix concrete and bituminous asphalt (which was used for paving roadways). Aggregate owned and operated numerous concrete and asphalt plants as well as stone quarries in the District of Massachusetts and

7

elsewhere. Aggregate divided its business operations into three separate "divisions." These divisions were known as the concrete division, the asphalt division, and the construction division. Aggregate had business offices located at 1751 Broadway in Saugus, Massachusetts.

13. Aggregate manufactured and supplied the concrete that was used by the general contractors mentioned above in the construction of slurry walls, base slabs, roof slabs and other concrete structures for CA/T contracts C17A1, C17A9, C17A6, C09A4, and C09B1, among others. This concrete was regularly delivered in trucks which carried approximately ten cubic yards of concrete.

14. The defendant ROBERT PROSPERI was the General Manager of Aggregate's concrete division. PROSPERI was responsible for the overall management of the concrete division and established division policies and procedures.

15. The defendant GREGORY A. STEVENSON was the District Operations Manager of Aggregate's concrete division. STEVENSON was responsible for assisting PROSPERI with the management of the concrete division and with the establishment of division policies and procedures.

16. The defendant GERARD M. MCNALLY was the quality control manager for Aggregate. In that capacity, MCNALLY participated in decision making regarding the disposition of concrete on the CA/T

8

project.

17.   The defendant MARC J. BLAIS was a dispatch manager in the ready-mix concrete division for Aggregate.  In that capacity, BLAIS participated in decision making regarding the disposition of concrete on the CA/T project.

18.   The defendant JOHN J. FARRAR was a dispatch manager in the ready-mix concrete division for Aggregate.  In that capacity, FARRAR participated in decision making regarding the disposition of concrete on the CA/T project.

19.   The defendant KEITH H. THOMAS was an assistant dispatch manager in the ready-mix concrete division for Aggregate.  In that capacity, THOMAS participated in decision making regarding the disposition of concrete on the CA/T project.

20.   Continuously from in or about and between 1996 and August 2005, in the District of Massachusetts and elsewhere, the defendants

ROBERT PROSPERI,
GREGORY A. STEVENSON,
GERARD M. MCNALLY,
MARC J. BLAIS
JOHN J. FARRAR, and
KEITH H. THOMAS

and others known and unknown to the Grand Jury, did unlawfully and knowingly combine, conspire, confederate and agree together and with each other to:

(1) make false statements, false representations, false reports, and false claims with respect to the character, quality,

9

quantity, and cost of materials furnished in connection with the construction of any highway or related project approved by the Secretary of Transportation in violation of Title 18, United States Code, Section 1020; and

(2) place in any post office or authorized depository for mail matter documents and other matter to be sent or delivered by the United States Postal Service and to deposit and cause to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier pursuant to a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations and promises and for the purpose of executing such scheme or artifice in violation of Title 18, United States Code, Section 1341;

in that the defendants and others known and unknown to the grand jury did conspire, confederate and agree to: (1) provide concrete to the general construction contractors on the CA/T contracts described in paragraphs 4 through 8 above which did not meet the requirements of the CA/T project; (2) provide false documents to said general contractors to conceal the true nature of the concrete knowing that said documents were required by the CA/T project; and (3) use the United States Postal Service as well as commercial interstate carriers to deliver invoices to said general construction contractors requesting payment for said concrete.

10

## METHODS AND MEANS OF THE CONSPIRACY

21.   It was a part of the conspiracy that the defendants and their co-conspirators did recycle concrete that was over ninety (90) minutes old, had been adulterated with the addition of excess water, and was not batched pursuant to CA/T project specifications.   The defendants and their co-conspirators delivered at least 5,000 truckloads of such concrete to CA/T projects.

22.   It was a part of the conspiracy that concrete trucks containing "leftover" concrete, i.e., concrete that had not been used by the previous customer, were "loaded over" with some amount of CA/T project concrete and delivered to the CA/T project.   These loads of leftover concrete were dubbed "10-9 loads" by the members of the conspiracy.   10-9 loads included concrete that did not meet the CA/T projects specifications, concrete that was older than 90 minutes, and concrete that had already been rejected by CA/T inspectors.

23.   It was a part of the conspiracy that concrete trucks that had been rejected by CA/T inspectors were simply routed back to the CA/T project by the defendants and their co-conspirators. The basis for rejection would include the fact that the concrete had exceeded the ninety (90) minute time limit or otherwise did not meet CA/T specifications.   On those occasions where the delay was caused by the general construction contractor, Aggregate

11

would be paid twice for delivering the same load of concrete to the CA/T project.

24.  It was a part of the conspiracy that in order to conceal this fraud, the defendants and their co-conspirators added excess amounts of water as well as other ingredients to 10-9 loads to make those loads appear to be freshly batched.

25.  It was a part of the conspiracy that in order to conceal this fraud, false batch reports were created by the defendants and their co-conspirators which falsely reported that the concrete had been batched within the applicable time period. On those occasions when the 10-9 loads did not contain the CA-T project formula or "mix," the batch report also falsely identified the load as the correct CA/T mix.

26.  It was a part of the conspiracy that the defendants and their co-conspirators delivered these false batch reports to CA/T project inspectors to induce the inspectors to accept the 10-9 loads.

27.  It was a part of the conspiracy that the defendants and their co-conspirators caused these false batch reports to become part of the records of the CA/T project knowing that the MTA would rely upon the false batch reports to determine the quality and amount of concrete placed by the general construction contractor as well as to document a basis for payment to the general construction contractor.

12

OVERT ACTS

28.  In furtherance of the conspiracy and to accomplish the objects thereof, the defendants and their co-conspirators committed and caused to be committed, in the District of Massachusetts and elsewhere, numerous overt acts including those set forth below in paragraphs 29 through 33.

29.  Overt Acts regarding C17A1:

(a)  On or about April 16, 1999, Aggregate truck no. 162 delivered a ten yard load of concrete which contained approximately six yards of old and non-specification concrete. This load was placed in slurry wall panel M-44, I-93 Northbound Tunnel.

(b)  On or about April 16, 1999, Aggregate truck no. 191 delivered a ten yard load of concrete which contained approximately two and one.half yards of old and non-specification concrete.  This load was placed in slurry wall panel M-44, I-93 Northbound Tunnel.

(c)  On or about April 22, 1999, Aggregate truck no. 34 delivered a ten yard load of concrete which contained approximately six yards of old and non-specification concrete. This load was placed in slurry wall panel M-46, I-93 Northbound Tunnel.

(d)  On or about April 22, 1999, Aggregate truck no. 210 delivered a ten yard load of concrete which contained

13

approximately ten yards of old and non-specification concrete. This load was placed in slurry wall panel M-46, I-93 Northbound Tunnel.

(e) On or about April 22, 1999, Aggregate truck no. 192 delivered a ten yard load of concrete which contained approximately eight yards of old concrete. This load was placed in slurry wall panel M-46, I-93 Northbound Tunnel.

(f) On or about April 22, 1999, Aggregate truck no. 175 delivered a ten yard load of concrete which contained approximately three and one-half yards of old and non-specification concrete. This load was placed in slurry wall panel M-46, I-93 Northbound Tunnel.

(g) On or about May 7, 1999, Aggregate truck no. 162 delivered a ten yard load of concrete which contained approximately two yards of old and non-specification concrete. This load was placed in slurry wall panel M-43, I-93 Northbound Tunnel.

(h) On or about May 7, 1999, Aggregate truck no. 115 delivered a ten yard load of concrete which contained approximately eight yards of old concrete. This load was placed in slurry wall panel M-43, I-93 Northbound Tunnel.

(i) On or about May 7, 1999, Aggregate truck no. 207 delivered a ten yard load of concrete which contained approximately four yards of old concrete. This load was placed

14

in slurry wall panel M-45, I-93 Northbound Tunnel.

(j)  On or about May 28, 1999, Aggregate truck no. 206 delivered ten yards of concrete from a load which contained approximately eleven yards of old concrete.  This load was placed in slurry wall panel E-13, I-93 Northbound Tunnel.

(k)  On or about May 28, 1999, Aggregate truck no. 188 delivered a ten yard load of concrete which contained approximately ten yards of non-specification concrete.  This load was placed in slurry wall panel E-13, I-93 Northbound Tunnel.

(l)  On or about May 28, 1999, Aggregate truck no. 210 delivered a ten yard load of concrete which contained approximately two and one-half yards of old and non-specification concrete.  This load was placed in slurry wall panel E-13, I-93 Northbound Tunnel.

(m)  On or about May 28, 1999, Aggregate truck no. 181 delivered a ten yard load of concrete which contained approximately one yard of old and non-specification concrete. This load was placed in slurry wall panel E-13, I-93 Northbound Tunnel.

(n)  On or about June 2, 2000, Aggregate truck no. 175 delivered ten yards of concrete from a load which contained approximately eleven yards of old and non-specification concrete. This load was placed in slurry wall panel M-4a, I-93 Northbound Tunnel.

15

(o) On or about July 20, 2000, Aggregate truck no. 159 delivered a ten yard load of concrete which contained approximately eight yards of old concrete. This load was placed in deep duct shaft panel #1, I-93 Northbound Tunnel.

(p) On or about August 9, 2000, Aggregate truck no. 225 delivered a ten yard load of concrete which contained approximately ten yards of old and non-specification concrete. This load was placed in deep duct shaft panel #4, I-93 Northbound Tunnel.

(q) On or about August 9, 2000, Aggregate truck no. 170 delivered a ten yard load of concrete which contained approximately three yards of old and non-specification concrete. This load was placed in deep duct shaft panel #4, I-93 Northbound Tunnel.

(r) On or about September 1, 2000, Aggregate truck no. 209 delivered a ten yard load of concrete which contained approximately seven yards of old and non-specification concrete. This load was placed in slurry wall panel M-18, I-93 Northbound Tunnel.

(s) On or about September 1, 2000, Aggregate truck no. 212 delivered a ten yard load of concrete which contained approximately six yards of old and non-specification concrete. This load was placed in slurry wall panel M-18, I-93 Northbound Tunnel.

16

(t)  On or about September 1, 2000, Aggregate truck no. 159 delivered a ten yard load of concrete which contained approximately seven yards of old and non-specification concrete. This load was placed in slurry wall panel M-18, I-93 Northbound Tunnel.

(u)  On or about September 12, 2000, Aggregate truck no. 173 delivered a ten yard load of concrete which contained approximately four yards of old concrete.  This load was placed in slurry wall panel TW-06, Silver Line Transit-way.

(v)  On or about October 17, 2000, Aggregate truck no. 178 delivered a ten yard load of concrete which contained approximately six yards of old and non-specification concrete. This load was placed in slurry wall panel M-15a, I-93 Northbound Tunnel.

(w)  On or about May 4, 2001, Aggregate truck no. 111 delivered a ten yard load of concrete which contained approximately eight yards of old and non-specification concrete. This load was placed in the sidewalks, I-93 Northbound Tunnel.

(x)  On or about May 4, 2001, Aggregate truck no. 231 delivered an eleven yard load of concrete which contained approximately five yards of old concrete.  This load was placed in the sidewalks, I-93 Northbound Tunnel.

(y)  On or about May 14, 2001, Aggregate truck no. 242 delivered a ten yard load of concrete which contained

17

approximately ten yards of old and non-specification concrete. This load was placed in base slab NB1-1bs, I-93 Northbound Tunnel.

(z)   On or about May 14, 2001, Aggregate truck no. 233 delivered an eleven yard load of concrete which contained approximately eight yards of old and non-specification concrete. This load was placed in a mud mat for Ramp ACN.

30.   Overt Acts regarding C09A4:

(a)   On or about June 28, 1999, Aggregate truck no. 157 delivered five yards of concrete from a load which contained approximately eight yards of old concrete. This load was placed in drilled shaft 310, Ramp D, I-93 Northbound.

(b)   On or about June 28, 1999, Aggregate truck no. 176 delivered a ten yard load of concrete which contained approximately ten yards of old concrete. This load was placed in drilled shaft 309, Ramp D, I-93 Northbound.

(c)   On or about November 2, 1999, Aggregate truck no. 161 delivered a ten yard load of concrete which contained approximately ten yards of old and non-specification concrete. This load was placed in drilled shaft frn3-f, Ramp LL, I-93 Northbound.

(d)   On or about November 2, 1999, Aggregate truck no. 204 delivered ten yards of concrete from a load which contained approximately eleven yards of old and non-specification concrete.

18

This load was placed in drilled shaft frn3-f, Ramp LL, I-93 Northbound.

(e)   On or about November 16, 1999, Aggregate truck no. 147 delivered a ten yard load of concrete which contained approximately five yards of old and non-specification concrete. This load was placed in a mud mat for viaduct Ramp MW101a, I-93 Northbound.

(f)   On or about May 10, 2000, Aggregate truck no. 200 delivered an eleven yard load of concrete which contained approximately eleven yards of old concrete.  This load was placed in the base slab for Ramp D, I-93 Northbound.

(g)   On or about May 10, 2000, Aggregate truck no. 116 delivered a ten yard load of concrete which contained approximately ten yards of old and non-specification concrete. This load was placed in the base slab for Ramp D, I-93 Northbound.

(h)   On or about May 11, 2000, Aggregate truck no. 231 delivered a ten yard load of concrete which contained approximately five yards of old and non-specification concrete. This load was placed in drilled shaft 410, Ramp L, I-93 Northbound.

(i)   On or about January 12, 2001, Aggregate truck no. 139 delivered a ten yard load of concrete which contained approximately ten yards of old and non-specification concrete.

19

05/03/06

This load was placed in the wall of Ramp L, I-93 Northbound.

(j)  On or about February 1, 2002, Aggregate truck no. 164 delivered an eight yard load of concrete which contained approximately ten yards of old and non-specification concrete. This load was placed in the barrier for the Viaduct Ramp XX, Viaduct Ramp HOV-EB, and Viaduct I-93 Northbound.

31.  Overt Acts regarding C17A6

(a)  On or about May 10, 2002, Aggregate truck no. 215 delivered a ten yard load of concrete which contained approximately one yard of old and non-specification concrete. This load was placed in slurry wall panel DL-15, Wall D, I-93 Southbound Tunnel.

(b)  On or about May 10 2002, Aggregate truck no. 209 delivered a ten yard load of concrete which contained approximately nine and one half yards of old and non-specification concrete. This load was placed in slurry wall panel DL-15, Wall D, I-93 Southbound Tunnel.

(c)  On or about May 22, 2002, Aggregate truck no. 162 delivered a ten yard load of concrete which contained approximately eight yards of old and non-specification concrete. This load was placed in slurry wall panel DL-13, Wall D, I-93 Southbound Tunnel.

(d)  On or about May 22, 2002, Aggregate truck no. 226 delivered a ten yard load of concrete which contained

20

approximately five yards of old and non-specification concrete. This load was placed in slurry wall panel DL-13, Wall D, I-93 Southbound Tunnel.

(e)  On or about January 16, 2003, Aggregate truck no. 205 delivered an eleven yard load of concrete which contained approximately six and one half yards of old concrete.  This load was placed in the wall at Ramp CSSA, I-93.

32.  Overt Acts regarding C17A9

(a)  On or about October 6, 1999, Aggregate truck no. 121 delivered a ten yard load of concrete which contained approximately ten yards of old and non-specification concrete. This load was placed in drilled shaft UC-4, supporting the I-93 Viaduct.

(b)  On or about October 29, 1999, Aggregate truck no. 158 delivered a ten yard load of concrete which contained approximately ten yards of old and non-specification concrete. This load was placed in the base slab at NB-13A, I-93 Northbound Tunnel.

(c)  On or about October 29, 1999, Aggregate truck no. 202 delivered a ten yard load of concrete which contained approximately ten yards of old and non-specification concrete. This load was placed in the base slab at NB-13A, I-93 Northbound Tunnel.

(d)  On or about November 4, 1999, Aggregate truck no.

21

242 delivered a ten yard load of concrete which contained
approximately six yards of old and non-specification concrete.
This load was placed in slurry wall panel W-59, I-93 Southbound
Tunnel.

(e)   On or about November 12, 1999, Aggregate truck no.
234 delivered a ten yard load of concrete which contained
approximately nine yards of old and non-specification concrete.
This load was placed in slurry wall panel W-66, I-93 Southbound
Tunnel.

(f)   On or about May 27, 2000, Aggregate truck no. 175
delivered a ten yard load of concrete which contained
approximately ten yards of old concrete.  This load was placed in
the base slab at NB-16A, or Wall SB-22, I-93 Tunnel.

(g)   On or about August 10, 2000, Aggregate truck no.
171 delivered a ten yard load of concrete which contained
approximately six yards of old and non-specification concrete.
This load was placed in the base slab at Ramp CNSA, I-93
Northbound.

(h)   On or about October 27, 2000, Aggregate truck no.
161 delivered an eleven yard load of concrete which contained
approximately eight yards of old and non-specification concrete.
This load was placed in the base slab at Ramp RT-7, I-93
Northbound.

(i)   On or about November 16, 2000, Aggregate truck no.

22

222 delivered an eleven yard load of concrete which contained
approximately ten yards of old and non-specification concrete.
This load was placed in the roof slab at AA1-AA6, I-93 Southbound
Tunnel.

(j)  On or about November 17, 2000, Aggregate truck no.
231 delivered a ten yard load of concrete which contained
approximately three yards of old and non-specification concrete.
This load was placed in the roof slab at Z13-AA1, I-93 Southbound
Tunnel.

(k)  On or about November 22, 2000, Aggregate truck no.
181 delivered a nine yard load of concrete which contained
approximately five yards of old and non-specification concrete.
This load was placed in the mud mat at Ramp RT-2, I-93
Northbound.

(l)  On or about March 19, 2001, Aggregate truck no.
209 delivered a eleven yard load of concrete which contained
approximately eight yards of old and non-specification concrete.
This load was placed in the mud mat at SB-18, I-93 Southbound
Tunnel.

(m)  On or about March 26, 2001, Aggregate truck no.
216 delivered an eleven yard load of concrete which contained
approximately eleven yards of old concrete.  This load was placed
in the mud mat at SB-19 and SB-20, I-93 Southbound Tunnel.

(n)  On or about March 27, 2001, Aggregate truck no.

23

214 delivered an eleven yard load of concrete which contained approximately eleven yards of old concrete. This load was placed in the mud mat at SB-19, I-93 Southbound Tunnel.

(o) On or about March 27, 2001, Aggregate truck no. 177 delivered an eleven yard load of concrete which contained approximately ten yards of old and non-specification concrete. This load was placed in the mud mat at SB-19, I-93 Southbound Tunnel.

(p) On or about April 6, 2001, Aggregate truck no. 118 delivered a ten yard load of concrete which contained approximately ten yards of old concrete. This load was placed in Wall D, Section 7 and 10, I-93 Southbound Tunnel.

(q) On or about April 23, 2001, Aggregate truck no. 185 delivered a ten yard load of concrete which contained approximately seven yards of old and non-specification concrete. This load was placed in the roof slab at AA-7 to AA-10 and from CC-3 to DD-4, I-93 Southbound Tunnel.

(r) On or about May 10, 2001, Aggregate truck no. 225 delivered an eleven yard load of concrete which contained approximately seven yards of old concrete. This load was placed in the base slab at Ramp CS-P8, I-93 Southbound.

(s) On or about May 10, 2001, Aggregate truck no. 188 delivered a ten yard load of concrete which contained approximately ten yards of old concrete. This load was placed in

24

the base slab at Ramp CS-P8, I-93 Southbound.

(t)   On or about June 8, 2001, Aggregate truck no. 134 delivered a ten yard load of concrete which contained approximately six yards of old and non-specification concrete. This load was placed in slurry wall panel TE-15, MBTA Station.

(u)   On or about June 15, 2001, Aggregate truck no. 202 delivered a ten yard load of concrete which contained approximately ten yards of old concrete.  This load was placed in slurry wall panel TE-4N, MBTA Station.

(v)   On or about June 20, 2001, Aggregate truck no. 214 delivered a ten yard load of concrete which contained approximately six yards of old and non-specification concrete. This load was placed in slurry wall panel TE-7N, MBTA Station.

(w)   On or about June 20, 2001, Aggregate truck no. 188 delivered a ten yard load of concrete which contained approximately five yards of old and non-specification concrete. This load was placed in slurry wall panel TE-7N, MBTA Station.

(x)   On or about August 10, 2001, Aggregate truck no. 158 delivered an eleven yard load of concrete which contained approximately six yards of old and non-specification concrete. This load was placed in wall A at Ramp CS-P, I-93 Southbound.

(y)   On or about August 24, 2001, Aggregate truck no. 249 delivered a ten yard load of concrete which contained approximately five yards of old and non-specification concrete.

25

This load was placed in slurry wall panel TE-12, MBTA Station.

33.  **Overt Acts regarding C09B1**

(a)  On or about October 28, 1999, Aggregate truck no. 130 delivered a nine yard load of concrete which contained approximately five yards of old and non-specification concrete. This load was placed in drilled shaft 3, Section 3, I-90 Eastbound Tunnel.

(b)  On or about November 1, 1999, Aggregate truck no. 110 delivered a ten yard load of concrete which contained approximately seven yards of old and non-specification concrete. This load was placed in drilled shaft 5, Section 1, I-90 Westbound Tunnel.

(c)  On or about November 1, 1999, Aggregate truck no. 116 delivered a nine yard load of concrete which contained approximately nine yards of old and non-specification concrete. This load was placed in drilled shaft 5, Section 1, I-90 Westbound Tunnel.

(d)  On or about August 31, 2000, Aggregate truck no. 226 delivered ten yards of concrete from a load which contained approximately eleven yards of old and non-specification concrete. This load was placed in drilled shaft 6, Section 2, I-90 Eastbound Tunnel.

(e)  On or about September 14, 2000, Aggregate truck no. 159 delivered a ten yard load of concrete which contained

26

approximately ten yards of old and non-specification concrete. This load was placed in drilled shaft 18, Section 2, I-90 Westbound Tunnel.

(f) On or about April 20, 2001, Aggregate truck no. 233 delivered an eleven yard load of concrete which contained approximately eleven yards of old concrete. This load was placed in the base slab at Ramp L, I-90 Eastbound.

(g) On or about July 5, 2001, Aggregate truck no. 232 delivered an eleven yard load of concrete which contained approximately eleven yards of old concrete. This load was placed in the wall at Ramp L, Section 7, I-90 Eastbound.

(h) On or about January 2, 2002, Aggregate truck no. 111 delivered a ten yard load of concrete which contained approximately ten yards of old and non-specification concrete. This load was placed in the east side interior wall, columns 8 and 9, I-90 Eastbound Tunnel.

(i) On or about January 22, 2002, Aggregate truck no. 186 delivered a ten yard load of concrete which contained approximately ten yards of old and non-specification concrete. This load was placed in duct shaft section 1, I-90 Westbound Tunnel.

(j) On or about April 1, 2002, Aggregate truck no. 162 delivered ten yards of concrete from a load which contained approximately eleven yards of old and non-specification concrete.

27

This load was used as ballast to sink the tunnel tubes at the Fort Point Channel, Section 2, I-90 Westbound Tunnel.

(k) On or about April 5, 2002, Aggregate truck no. 207 delivered a ten yard load of concrete which contained approximately five yards of old and non-specification concrete. This load was placed in the east seawall, Fort Point Channel.

(1) On or about April 5, 2002, Aggregate truck no. 154 delivered a ten yard load of concrete which contained approximately one yard of old and non-specification concrete. This load was placed in the east seawall, Fort Point Channel.

(m) On or about April 5, 2002, Aggregate truck no. 208 delivered a ten yard load of concrete which contained approximately three yards of old and non-specification concrete. This load was placed in the east seawall, Fort Point Channel.

(n) On or about April 5, 2002, Aggregate truck no. 179 delivered a ten yard load of concrete which contained approximately four yards of old and non-specification concrete. This load was placed in the east seawall, Fort Point Channel.

(o) On or about May 7, 2002, Aggregate truck no. 178 delivered a ten yard load of concrete which contained approximately ten yards of old and non-specification concrete. This load was placed in walls 3 and 4, I-90 Westbound Tunnel.

(p) On or about February 24, 2003, Aggregate truck no. 252 delivered a ten yard load of concrete which contained

28

approximately five yards of old and non-specification concrete.
This load was placed in the east seawall, Fort Point Channel.

(q)  On or about February 24, 2003, Aggregate truck no.
254 delivered a ten yard load of concrete which contained
approximately five yards of old and non-specification concrete.
This load was placed in the east seawall, Fort Point Channel.

All in violation of Title 18, United States Code, Section
371.

29

COUNT TWO

(Conspiracy to defraud the Government with respect to claims)

1.    Paragraphs 1 through 19 and 21 through 33 of Count One of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.    Continuously from in or about and between 1996 and August 2005, in the District of Massachusetts and elsewhere, the defendants

> ROBERT PROSPERI,
> GREGORY A. STEVENSON,
> GERARD M. MCNALLY,
> MARC J. BLAIS,
> JOHN J. FARRAR, and
> KEITH H. THOMAS,

and others known and unknown to the Grand Jury, did unlawfully and knowingly combine, conspire, confederate and agree together and with each other to defraud the United States and an agency thereof, the United States Department of Transportation, by obtaining and aiding to obtain the payment and allowance of false, fictitious and fraudulent claims in that the defendants and others known and unknown to the grand jury did conspire, confederate and agree (1) to provide concrete to the general construction contractors on the CA/T contracts described in paragraphs 4 through 8 of Count One which concrete did not meet the requirements of the CA/T project and (2) to provide false documents to said general construction contractors to conceal the substandard nature of the concrete knowing that said documents

30

were required by the CA/T project and would be used as part of a claim for payment from the CA/T project.

All in violation of Title 18, United States Code, Section 286.

## COUNTS THREE THROUGH EIGHTY-FIVE

(Making false statements in connection with highway projects)

1. Paragraphs 1 through 19 and 29 through 33 of Count One of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2. On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendants

> ROBERT PROSPERI,
> GREGORY A. STEVENSON,
> GERARD M. MCNALLY,
> MARC J. BLAIS,
> JOHN J. FARRAR, and
> KEITH H. THOMAS,

aided and abetted by others known and unknown to the Grand Jury and being vicariously liable for the acts of each other and their co-conspirators, did unlawfully and knowingly make false statements, false representations, false reports, and false claims with respect to the character, quality, quantity, and cost of materials furnished in connection with the construction of any highway or related project approved by the Secretary of Transportation in that the defendants and their co-conspirators did cause concrete which did not meet CA/T specifications to be delivered to CA/T construction projects and did cause false concrete batch reports as specifically set forth below to be delivered to CA/T inspectors and general construction contractors to conceal the true nature of said concrete.

32

| COUNT | DATE OF FALSE BATCH REPORT: | FALSE INFORMATION CONCEALED AS SET FORTH IN OVERT ACT: |
|-------|------------------------------|--------------------------------------------------------|
| 3 | April 16, 1999 | 29(a) |
| 4 | April 16, 1999 | 29(b) |
| 5 | April 22, 1999 | 29(c) |
| 6 | April 22, 1999 | 29(d) |
| 7 | April 22, 1999 | 29(e) |
| 8 | April 22, 1999 | 29(f) |
| 9 | May 7, 1999 | 29(g) |
| 10 | May 7, 1999 | 29(h) |
| 11 | May 7, 1999 | 29(i) |
| 12 | May 28, 1999 | 29(j) |
| 13 | May 28, 1999 | 29(k) |
| 14 | May 28, 1999 | 29(l) |
| 15 | May 28, 1999 | 29(m) |
| 16 | June 2, 2000 | 29(n) |
| 17 | July 20, 2000 | 29(o) |
| 18 | August 9, 2000 | 29(p) |
| 19 | August 9, 2000 | 29(q) |
| 20 | September 1, 2000 | 29(r) |
| 21 | September 1, 2000 | 29(s) |
| 22 | September 1, 2000 | 29(t) |
| 23 | September 12, 2000 | 29(u) |
| 24 | October 17, 2000 | 29(v) |

33

| 25 | May 4, 2001 | 29(w) |
| 26 | May 4, 2001 | 29(x) |
| 27 | May 14, 2001 | 29(y) |
| 28 | May 14, 2001 | 29(z) |
| 29 | June 28, 1999 | 30(a) |
| 30 | June 28, 1999 | 30(b) |
| 31 | November 2, 1999 | 30(c) |
| 32 | November 2, 1999 | 30(d) |
| 33 | November 16, 1999 | 30(e) |
| 34 | May 10, 2000 | 30(f) |
| 35 | May 10, 2000 | 30(g) |
| 36 | May 11, 2000 | 30(h) |
| 37 | January 12, 2001 | 30(i) |
| 38 | February 1, 2002 | 30(j) |
| 39 | May 10, 2002 | 31(a) |
| 40 | May 10, 2002 | 31(b) |
| 41 | May 22, 2002 | 31(c) |
| 42 | May 22, 2002 | 31(d) |
| 43 | January 16, 2003 | 31(e) |
| 44 | October 6, 1999 | 32(a) |
| 45 | October 29, 1999 | 32(b) |
| 46 | October 29, 1999 | 32(c) |
| 47 | November 4, 1999 | 32(d) |
| 48 | November 12, 1999 | 32(e) |

34

| 49 | May 27, 2000 | 32(f) |
| 50 | August 10, 2000 | 32(g) |
| 51 | October 27, 2000 | 32(h) |
| 52 | November 16, 2000 | 32(i) |
| 53 | November 17, 2000 | 32(j) |
| 54 | November 22, 2000 | 32(k) |
| 55 | March 19, 2001 | 32(l) |
| 56 | March 26, 2001 | 32(m) |
| 57 | March 27, 2001 | 32(n) |
| 58 | March 27, 2001 | 32(o) |
| 59 | April 6, 2001 | 32(p) |
| 60 | April 23, 2001 | 32(q) |
| 61 | May 10, 2001 | 32(r) |
| 62 | May 10, 2001 | 32(s) |
| 63 | June 8, 2001 | 32(t) |
| 64 | June 15, 2001 | 32(u) |
| 65 | June 20, 2001 | 32(v) |
| 66 | June 20, 2001 | 32(w) |
| 67 | August 10, 2001 | 32(x) |
| 68 | August 24, 2001 | 32(y) |
| 69 | October 28, 1999 | 33(a) |
| 70 | November 1, 1999 | 33(b) |
| 71 | November 1, 1999 | 33(c) |
| 72 | August 31, 2000 | 33(d) |

| 73 | September 14, 2000 | 33(e) |
| 74 | April 20, 2001 | 33(f) |
| 75 | July 5, 2001 | 33(g) |
| 76 | January 2, 2002 | 33(h) |
| 77 | January 22, 2002 | 33(i) |
| 78 | April 1, 2002 | 33(j) |
| 79 | April 5, 2002 | 33(k) |
| 80 | April 5, 2002 | 33(l) |
| 81 | April 5, 2002 | 33(m) |
| 82 | April 5, 2002 | 33(n) |
| 83 | May 7, 2002 | 33(o) |
| 84 | February 24, 2003 | 33(p) |
| 85 | February 24, 2003 | 33(q) |

All in violation of Title 18, United States Code, Sections 1020 and 2.

## COUNTS EIGHTY-SIX THROUGH ONE HUNDRED THIRTY-FIVE
### (Mail fraud)

1.    Paragraphs 1 through 19 and 29 through 33 of Count One of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.    On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendants

> ROBERT PROSPERI,
> GREGORY A. STEVENSON,
> GERARD M. MCNALLY,
> MARC J. BLAIS,
> JOHN J. FARRAR, and
> KEITH H. THOMAS,

aided and abetted by others known and unknown to the Grand Jury and being vicariously liable for the acts of each other and their co-conspirators, did unlawfully and knowingly place in any post office or authorized depository for mail matter documents and other matter to be sent or delivered by the United States Postal Service and did deposit and cause to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier pursuant to a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations and promises and for the purpose of executing such scheme or artifice in that the defendants and their co-conspirators did: (1) cause concrete to be delivered to general construction contractors on the CA/T project which concrete did not meet the requirements of the CA/T

37

project; (2) provide false documents to said general construction contractors to conceal the true nature of the concrete knowing that said documents were required by the CA/T project; and (3) use the United States Postal Service as well as commercial interstate carriers to deliver invoices as specifically set forth below to said general construction contractors requesting payment for said concrete.

| COUNT | INVOICE NUMBER | FALSE INFORMATION CONCEALED AS SET FORTH IN OVERT ACT: |
|-------|----------------|-------------------------------------------------------|
| 86 | 311600 | 29(c) |
| 87 | 311597 | 29(d),29(e),29(f) |
| 88 | 312754 | 29(g),29(h) |
| 89 | 312757 | 29(i) |
| 90 | 314448 | 29(j),29(k),29(1),29(m) |
| 91 | 340463 | 29(n) |
| 92 | 344245 | 29(o) |
| 93 | 345756 | 29(p),29(q) |
| 94 | 350866 | 29(v) |
| 95 | 363301 | 29(w),29(x) |
| 96 | 363963 | 29(y) |
| 97 | 363962 | 29(z) |
| 98 | 317228 | 30(a) |
| 99 | 317229 | 30(b) |
| 100 | 327608 | 30(c),30(d) |

38

| | | |
|---|---|---|
| 101 | 328811 | 30(e) |
| 102 | 338503 | 30(f),30(g) |
| 103 | 300435 | 30(i) |
| 104 | 383492 | 31(a),31(b) |
| 105 | 384134 | 31(c),31(d) |
| 106 | 401112 | 31(e) |
| 107 | 325309 | 32(a) |
| 108 | 327231 | 32(b),32(c) |
| 109 | 328184 | 32(d) |
| 110 | 345875 | 32(g) |
| 111 | 351735 | 32(h) |
| 112 | 353083 | 32(i) |
| 113 | 353210 | 32(j) |
| 114 | 300434 | 32(k) |
| 115 | 360578 | 32(l) |
| 116 | 360870 | 32(m) |
| 117 | 361015 | 32(n),32(o) |
| 118 | 361639 | 32(p) |
| 119 | 362497 | 32(q) |
| 120 | 363737 | 32(r),32(s) |
| 121 | 365602 | 32(t) |
| 122 | 366178 | 32(u) |
| 123 | 366467 | 32(v),32(w) |
| 124 | 369723 | 32(x) |

| 125 | 370606 | 32(y) |
| 126 | 327459 | 33(b),33(c) |
| 127 | 347581 | 33(d) |
| 128 | 362383 | 33(f) |
| 129 | 367397 | 33(g) |
| 130 | 378118 | 33(h) |
| 131 | 378864 | 33(i) |
| 132 | 381317 | 33(j) |
| 133 | 381562 | 33(k),33(l),33(m),33(n) |
| 134 | 383243 | 33(o) |
| 135 | 402498 | 33(p),33(q) |

All in violation of Title 18, United States Code, Sections 1341 and 2.

40

A TRUE BILL

Foreperson of the Grand Jury

Assistant United States Attorney

DISTRICT OF MASSACHUSETTS;      May 3, 2006, at 12:39 pm

Returned into the District Court by the Grand Jurors and filed.

Deputy Clerk

JS 45 (5/97) - (Revised USAO MA 11/15/05)

**Criminal Case Cover Sheet** _____ **U.S. District Court - District of Massachusetts**

**Place of Offense:** __Massachusetts__   **Category No.** _I_____   **Investigating Agency** _DOT/FBI/MSP_____

**City** __Boston_____   **Related Case Information:**

**County** __Suffolk_____

Superseding Ind./ Inf. _____   Case No. _____
Same Defendant _____   New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name __Robert Prosperi_____   Juvenile   ☐ Yes   ☒ No

Alias Name _____

Address __6 Charing Cross, Lynnfield, MA 01940_____

Birth date (Year only): _1942_ SSN (last 4 #): _0899_ Sex _M_ Race: __White_____ Nationality: _USA_____

**Defense Counsel if known:** __Richard Egbert_____   **Address:** _99 Summer Street_____
                                                                   _Boston, MA 02110_____

**Bar Number:** _____

**U.S. Attorney Information:**

**AUSA** __Anthony E. Fuller/Jeffrey Cohen_____   **Bar Number if applicable** _____

**Interpreter:**   ☐ Yes ☒ No   List language and/or dialect: _____

**Victims:** ☒ Yes ☐ No   If Yes, are there multiple crime victims under 18 U.S.C. §3771(d)(2) ☐ Yes ☒ No

**Matter to be SEALED:**   ☒ Yes   ☐ No

   ☒ **Warrant Requested**   ☐ **Regular Process**   ☐ **In Custody**

**Location Status:**

**Arrest Date:** __May 4, 2006_____

☐ **Already in Federal Custody as** _____ **in** _____ .
☐ **Already in State Custody** _____   ☐ **Serving Sentence**   ☐ **Awaiting Trial**
☐ **On Pretrial Release:** **Ordered by** _____ **on** _____

**Charging Document:**   ☐ Complaint   ☐ Information   ☒ Indictment

**Total # of Counts:**   ☐ Petty _____   ☐ Misdemeanor _____   ☒ Felony __135__

Continue on Page 2 for Entry of U.S.C. Citations

☒  I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

**Date:** _May 2, 2006_   **Signature of AUSA:** _____

JS 45 (5/97) - (Revised USAO MA 11/15/05) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy clerk): _____

**Name of Defendant**    Robert Prosperi _____

### U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  18 U.S.C. §371 | Conspiracy to commit mail fraud | |
| Set 2  18 U.S.C. §371 | Consp. to make false statements - fed. hwy project | |
| Set 3  18 U.S.C. §286 | Conspiracy to defraud govt. with respect to claims | |
| Set 4  18 U.S.C. §1341 | Mail Fraud | |
| Set 5  18 U.S.C. §1020 | False statements with respect to fed. hwy project | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

**ADDITIONAL INFORMATION:**

JS 45 (5/97) - (Revised USAO MA 11/15/05)

**Criminal Case Cover Sheet**                     **U.S. District Court - District of Massachusetts**

Place of Offense: __Massachusetts__   Category No. __I__        Investigating Agency __DOT/FBI/MSP__

City __Boston__                      **Related Case Information:**

County __Suffolk__                   Superseding Ind./ Inf. _____   Case No. _____
                                     Same Defendant _____   New Defendant _____
                                     Magistrate Judge Case Number _____
                                     Search Warrant Case Number _____
                                     R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name __Gregory Stevenson__                     Juvenile   ☐ Yes   ☒ No

Alias Name _____

Address __2117 Sugar Maple Lane, Furlong, PA 18925__

Birth date (Year only): __1953__ SSN (last 4 #): __2267__ Sex __M__ Race: __White__ Nationality: __USA__

**Defense Counsel if known:** _____   Address: _____

**Bar Number:** _____

**U.S. Attorney Information:**

AUSA __Anthony E. Fuller/Jeffrey Cohen__        Bar Number if applicable _____

**Interpreter:**   ☐ Yes ☒ No        **List language and/or dialect:** _____

Victims: ☒ Yes ☐ No   If Yes, are there multiple crime victims under 18 U.S.C. §3771(d)(2) ☐ Yes ☒ No

**Matter to be SEALED:**   ☒ Yes   ☐ No

   ☒ **Warrant Requested**        ☐ **Regular Process**        ☐ **In Custody**

**Location Status:**

**Arrest Date:**   __May 4, 2006__

☐ **Already in Federal Custody as** _____ in _____ .
☐ **Already in State Custody** _____ ☐ **Serving Sentence**   ☐ **Awaiting Trial**
☐ **On Pretrial Release:**   Ordered by _____ on _____

**Charging Document:**   ☐ Complaint   ☐ Information   ☒ Indictment

**Total # of Counts:**   ☐ Petty _____   ☐ Misdemeanor _____   ☒ Felony   __135__

**Continue on Page 2 for Entry of U.S.C. Citations**

☒   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date: __May 2, 2006__        Signature of AUSA: _____

JS 45 (5/97) - (Revised USAO MA 11/15/05) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy clerk): _____

**Name of Defendant** ___Gregory Stevenson___ _____

## U.S.C. Citations

| **Index Key/Code** | **Description of Offense Charged** | **Count Numbers** |
|---|---|---|
| **Set 1** _18 U.S.C. §371_ | Conspiracy to commit mail fraud | |
| **Set 2** _18 U.S.C. §371_ | Consp. to make false statements - fed. hwy project | |
| **Set 3** _18 U.S.C. §286_ | Conspiracy to defraud govt. with respect to claims | |
| **Set 4** _18 U.S.C. §1341_ | Mail Fraud | |
| **Set 5** _18 U.S.C. §1020_ | False statements with respect to fed. hwy project | |
| **Set 6** _____ | | |
| **Set 7** _____ | | |
| **Set 8** _____ | | |
| **Set 9** _____ | | |
| **Set 10** _____ | | |
| **Set 11** _____ | | |
| **Set 12** _____ | | |
| **Set 13** _____ | | |
| **Set 14** _____ | | |
| **Set 15** _____ | | |

**ADDITIONAL INFORMATION:**

JS 45 (5/97) - (Revised USAO MA 11/15/05)

## Criminal Case Cover Sheet                    U.S. District Court - District of Massachusetts

**Place of Offense:** Massachusetts     **Category No.** I               **Investigating Agency** DOT/FBI/MSP

**City** Boston                          **Related Case Information:**

**County** Suffolk                       Superseding Ind./ Inf. _____   Case No. _____
                                         Same Defendant _____   New Defendant _____
                                         Magistrate Judge Case Number _____
                                         Search Warrant Case Number _____
                                         R 20/R 40 from District of _____

### Defendant Information:

Defendant Name   Gerald M. McNally _____   Juvenile   ☐ Yes   ☒ No

Alias Name _____

Address   245 Hingham Street, Rockland, MA 02370 _____

Birth date (Year only):  1952  SSN (last 4 #):  4197  Sex  M  Race:   White _____ Nationality:  USA _____

**Defense Counsel if known:** _____   Address: _____

**Bar Number:** _____

### U.S. Attorney Information:

**AUSA**  Anthony E. Fuller/Jeffrey Cohen _____   **Bar Number if applicable** _____

**Interpreter:**      ☐ Yes  ☒ No            **List language and/or dialect:** _____

**Victims:** ☒ Yes ☐ No     **If Yes, are there multiple crime victims under 18 U.S.C. §3771(d)(2)** ☐ Yes ☒ No

**Matter to be SEALED:**     ☒ Yes     ☐ No

  ☒ **Warrant Requested**          ☐ **Regular Process**              ☐ **In Custody**

**Location Status:**

**Arrest Date:**      May 4, 2006 _____

☐ Already in Federal Custody as _____  in  _____ .
☐ Already in State Custody _____  ☐ Serving Sentence   ☐ Awaiting Trial
☐ On Pretrial Release:   Ordered by _____  on  _____

**Charging Document:**      ☐ Complaint        ☐ Information       ☒ Indictment

**Total # of Counts:**      ☐ Petty _____   ☐ Misdemeanor _____   ☒ Felony   135 _____

Continue on Page 2 for Entry of U.S.C. Citations

☒    I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
     accurately set forth above.

Date:   May 1, 2006        Signature of AUSA:  _____

**District Court Case Number** (To be filled in by deputy clerk): _____

**Name of Defendant**    Gerald McNally _____

## U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  18 U.S.C. §371 | Conspiracy to commit mail fraud | |
| Set 2  18 U.S.C. §371 | Consp. to make false statements - fed. hwy project | |
| Set 3  18 U.S.C. §286 | Conspiracy to defraud govt. with respect to claims | |
| Set 4  18 U.S.C. §1341 | Mail Fraud | |
| Set 5  18 U.S.C. §1020 | False statements with respect to fed. hwy project | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

**ADDITIONAL INFORMATION:**

JS 45 (5/97) - (Revised USAO MA 11/15/05)

| **Criminal Case Cover Sheet** | **U.S. District Court - District of Massachusetts** |
|---|---|

**Place of Offense:** _Massachusetts_   **Category No.** _I_____   **Investigating Agency** _DOT/FBI/MSP_____

**City** _Boston_____   **Related Case Information:**

**County** _Suffolk_____

Superseding Ind./ Inf. _____   Case No. _____
Same Defendant _____   New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name _John J. Farrar_____   Juvenile   ☐ Yes   ☒ No

Alias Name _Jeff_____

Address _60 Brooklyn Road, Canterbury, CT 06331_____

Birth date (Year only): _1963_  SSN (last 4 #): _8000_  Sex _M_ Race: _White_____ Nationality: _USA_____

**Defense Counsel if known:** _____   Address: _____

**Bar Number:** _____

**U.S. Attorney Information:**

AUSA _Anthony E. Fuller/Jeffrey Cohen_____   Bar Number if applicable _____

**Interpreter:**   ☐ Yes ☒ No   List language and/or dialect: _____

Victims: ☒ Yes ☐ No   If Yes, are there multiple crime victims under 18 U.S.C. §3771(d)(2) ☐ Yes ☒ No

**Matter to be SEALED:**   ☒ Yes   ☐ No

☒ **Warrant Requested**   ☐ **Regular Process**   ☐ **In Custody**

**Location Status:**

**Arrest Date:** _May 4, 2006_____

☐ **Already in Federal Custody as** _____ **in** _____  .
☐ **Already in State Custody** _____   ☐ **Serving Sentence**   ☐ **Awaiting Trial**
☐ **On Pretrial Release:**   **Ordered by** _____ **on** _____

**Charging Document:**   ☐ Complaint   ☐ Information   ☒ Indictment

**Total # of Counts:**   ☐ Petty _____   ☐ Misdemeanor _____   ☒ Felony   _135_

**Continue on Page 2 for Entry of U.S.C. Citations**

☒   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date: _May 1, 2006_   Signature of AUSA: _____

JS 45 (5/97) - (Revised USAO MA 11/15/05) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy clerk): _____

**Name of Defendant**    John Farrar _____

## U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  18 U.S.C. §371 | Conspiracy to commit mail fraud | |
| Set 2  18 U.S.C. §371 | Consp. to make false statements - fed. hwy project | |
| Set 3  18 U.S.C. §286 | Conspiracy to defraud govt. with respect to claims | |
| Set 4  18 U.S.C. §1341 | Mail Fraud | |
| Set 5  18 U.S.C. §1020 | False statements with respect to fed. hwy project | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

**ADDITIONAL INFORMATION:**

JS 45 (5/97) - (Revised USAO MA 11/15/05)

| **Criminal Case Cover Sheet** | **U.S. District Court - District of Massachusetts** |
|---|---|

**Place of Offense:** Massachusetts    **Category No.** I          **Investigating Agency** DOT/FBI/MSP

**City** Boston

**County** Suffolk

**Related Case Information:**

Superseding Ind./ Inf.          Case No.
Same Defendant          New Defendant
Magistrate Judge Case Number
Search Warrant Case Number
R 20/R 40 from District of

**Defendant Information:**

Defendant Name   Marc J. Blais                    Juvenile    ☐ Yes   [x] No

Alias Name

Address   96 Newton Ave., Lynn, MA 01905

Birth date (Year only):  1970  SSN (last 4 #):  1457  Sex  M  Race:   White       Nationality:  USA

**Defense Counsel if known:**                    Address:

**Bar Number:**

**U.S. Attorney Information:**

**AUSA** Anthony E. Fuller /Jeffrey Cohen          **Bar Number if applicable**

**Interpreter:**    ☐ Yes  [x] No          List language and/or dialect:

**Victims:** [x] Yes ☐ No    If Yes, are there multiple crime victims under 18 U.S.C. §3771(d)(2) ☐ Yes [x] No

**Matter to be SEALED:**    [x] Yes    ☐ No

   [x] **Warrant Requested**          ☐ **Regular Process**          ☐ **In Custody**

**Location Status:**

**Arrest Date:**    May 4, 2006

☐ **Already in Federal Custody as**                    in
☐ **Already in State Custody**                    ☐ **Serving Sentence**    ☐ **Awaiting Trial**
☐ **On Pretrial Release:**   **Ordered by**                    **on**

| **Charging Document:** | ☐ Complaint | ☐ Information | [x] Indictment |
|---|---|---|---|
| **Total # of Counts:** | ☐ Petty | ☐ Misdemeanor | [x] Felony   135 |

Continue on Page 2 for Entry of U.S.C. Citations

[x]   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
accurately set forth above.

Date:   May 2 2006    Signature of AUSA:

JS 45 (5/97) - (Revised USAO MA 11/15/05) Page 2 of 2 or Reverse

**District Court Case Number (To be filled in by deputy clerk):** _____

**Name of Defendant**      Marc Blaise _____

## U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  18 U.S.C. §371 | Conspiracy to commit mail fraud | |
| Set 2  18 U.S.C. §371 | Consp. to make false statements - fed. hwy project | |
| Set 3  18 U.S.C. §286 | Conspiracy to defraud govt. with respect to claims | |
| Set 4  18 U.S.C. §1341 | Mail Fraud | |
| Set 5  18 U.S.C. §1020 | False statements with respect to fed. hwy project | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

**ADDITIONAL INFORMATION:**

**JS 45 (5/97) - (Revised USAO MA 11/15/05)**

| **Criminal Case Cover Sheet** | **U.S. District Court - District of Massachusetts** |
|---|---|

**Place of Offense:** _Massachusetts_  **Category No.** _I_  **Investigating Agency** _DOT/ FBI/MSP_

**City** _Boston_  **Related Case Information:**

**County** _Suffolk_
Superseding Ind./ Inf. _____  Case No. _____
Same Defendant _____  New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name _Keith H. Thomas_  Juvenile ☐ Yes ☒ No

Alias Name _____

Address _158 Concord Road, Billerica, MA 01821_

Birth date (Year only): _1955_ SSN (last 4 #): _5804_ Sex _M_ Race: _White_ Nationality: _USA_

**Defense Counsel if known:** _____  **Address:** _____

**Bar Number:** _____

**U.S. Attorney Information:**

**AUSA** _Anthony E. Fuller/Jeffrey Cohen_  **Bar Number if applicable** _____

**Interpreter:** ☐ Yes ☒ No  **List language and/or dialect:** _____

**Victims:** ☒ Yes ☐ No  If Yes, are there multiple crime victims under 18 U.S.C. §3771(d)(2) ☐ Yes ☒ No

**Matter to be SEALED:** ☒ Yes ☐ No

☒ **Warrant Requested**  ☐ **Regular Process**  ☐ **In Custody**

**Location Status:**

**Arrest Date:** _May 4, 2006_

☐ **Already in Federal Custody as** _____ in _____
☐ **Already in State Custody** _____ ☐ **Serving Sentence** ☐ **Awaiting Trial**
☐ **On Pretrial Release:** **Ordered by** _____ on _____

**Charging Document:** ☐ Complaint ☐ Information ☒ Indictment

**Total # of Counts:** ☐ Petty _____ ☐ Misdemeanor _____ ☒ Felony _135_

Continue on Page 2 for Entry of U.S.C. Citations

☒  I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

**Date:** _May 2, 2006_  **Signature of AUSA:** _____

JS 45 (5/97) - (Revised USAO MA 11/15/05) Page 2 of 2 or Reverse

**District Court Case Number (To be filled in by deputy clerk):** _____

**Name of Defendant**     Keith Thomas _____

### U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  18 U.S.C. §371 | Conspiracy to commit mail fraud | |
| Set 2  18 U.S.C. §371 | Consp. to make false statements - fed. hwy project | |
| Set 3  18 U.S.C. §286 | Conspiracy to defraud govt. with respect to claims | |
| Set 4  18 U.S.C. §1341 | Mail Fraud | |
| Set 5  18 U.S.C. §1020 | False statements with respect to fed. hwy project | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

**ADDITIONAL INFORMATION:**